BOARD OF HEALTH OF THE STATE OF NEW JERSEY, DE-FENDANT IN CERTIORARI, v. ERNEST VANDRUENS, PROSECUTOR.

Argued December 5, 1908—Decided February 23, 1909.

A complaint filed to recover a penalty, which alleges that the defendant "had in his possession, with intent to distribute or sell" milk of a quality condemned by the statute, is not met by a plea that the defendant did nothing to produce the condition complained of, and in the absence of other proof upon the part of defendant, and uncontradicted proof upon the part of the state, the court was warranted in directing a verdict for the plaintiff.

On *certiorari.*

Before Justices REED, BERGEN and MINTURN.

For the prosecutor, *John S. Mackay.*

*Contra, Josiah Stryker,* and *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

MINTURN, J. The writ of *certiorari* in this case is designed to review the record of a judgment obtained for a penalty by the state board of health against the prosecutor before a justice of the peace of the county of Bergen and the affirmance of that judgment upon appeal by the Court of Common Pleas. With the record in the case is sent up a state of the case signed by the judge of the Common Pleas, which, under the adjudications of this court, forms no part of the record unless diminu-

tion has been alleged; and finding no such rule in the record, we are not at liberty to consider the state of the case. *Spencer* v. *Bartine,* 44 *Vroom* 362.

The reasons assigned for reversal of the judgment below are reduced by counsel for the prosecutor to two; the first of which alleges that the complaint fails to allege the particular subdivision of the act which the state board of health claims to have been violated.

The complaint alleges that on the 9th day of August, 1906, the prosecutor "had in his possession at Hackensack, with intent to distribute and sell the same, milk to which had been added water, contrary to and in violation of section 4 of an act of the legislature of the State of New Jersey entitled 'An act to secure the purity of foods, beverages, confectionery, condiments, drugs and medicines, and to prevent deception in the distribution and sale thereof,' approved March 31st, 1901. Said milk being impure under the provisions of section 3 of the aforesaid act, as said section was amended by act approved April 12th, 1905."

Section 4 of the original act provides that "no person shall distribute or sell or have in his possession with intent to distribute or sell any article of food or drug which under the provisions of this act shall be deemed to be impure."

Subsection 3 of section 13 of the act as amended by the act of 1906 (*Pamph. L.,* p. 686), fixes the penalty for violation and furnishes a statutory definition of the term impure milk, viz.: "If it contains more than eighty-eight per centum of watery fluids or less than twelve per centum of solids."

The original act and its amendments of 1905 and 1906 provide a legislative policy or regulation for the protection of the public against the use of impure and counterfeit foods, are clearly in *pari materia,* and in our judgment are sufficiently indicated in the complaint to give notice to the defendant of the nature of the violation of law he was charged with, and the specific enactments which made his acts an offence. *State* v. *Spear,* 34 *Vroom* 179; *Shivers* v. *Newton,* 16 *Id.* 469.

In this connection it may be observed that it does not appear from the record before us that this objection was brought to

the attention of the trial court, and such omission, it is settled, debars the prosecutor from taking advantage of the objection here. *Steward* v. *Sears,* 7 *Vroom* 173; *Butts* v. *French,* 13 *Id.* 397.

The second and final objection urged by the prosecutor is that the court directed the jury to find a verdict against the prosecutor, and in favor of the state board, thus depriving the prosecutor, as he alleges, of·his right to a jury trial. This claim to the right of trial by jury is based upon the contention, that as the proceeding *sub judice* was to recover a penalty, it was at least a *quasi* criminal prosecution, and not a civil action. But the adjudications of this court are to the contrary. *Brophy* v. *Perth Amboy,* 15 *Vroom* 217; *Cahill* v. *Pennsylvania Railroad Co.,* 27 *Id.* 445; *Athletic Association* v. *New Brunswick,* 26 *Id.* 279; *McGuire* v. *Doscher,* 36 *Id.* 139.

The *status* of the proceeding having been repeatedly adjudged to be of a civil and not a criminal character, it follows that the rules of procedure peculiar to the civil jurisdiction were applicable in the trial of the cause; and that upon familiar principles it was competent for the court to direct a verdict, if the testimony was of such a character as to warrant the direction. *Crosby* v. *Wells,* 44 *Vroom* 790; *Polhemus* v. *Prudential Realty Company,* 45 *Id.* 570.

It will be observed that the statute *sub judice* does not make the defendant's guilt dependent upon his knowledge or ignorance of the constituent physical elements of the article he was selling or distributing; and the sole inquiry in the case, therefore, was whether the defendant, in the language of the statute, had in his possession with intent to distribute or sell milk of the quality condemned by the act, regardless of his ignorance of its constituent elements or the intention *bona fide* or *mala fide,* which animated him in selling or distributing it. *Waterbury* v. *Newton,* 21 *Vroom* 534; *Halstead* v. *State,* 12 *Id.* 552; *Cigar Makers' Union* v. *Goldberg,* 41 *Id.* 488; *Commonwealth* v. *Goodman,* 97 *Mass.* 117.

The state proved the defective quality of the milk by ample testimony; and the defendant met this issue by alleging in effect that if the milk was within the condemnatory language of

the statute, he did nothing to make it so. This defence was clearly *petitio principii,* entirely beside the question at issue, and warranted the court, under the uncontradicted testimony, in directing the jury to find a verdict for the plaintiff.

The judgment will be affirmed.