STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GEORGE TUZENEW, HARRY SUCKOW, MAX KOFFMAN AND HASKILL McKELVEY, PLAINTIFFS IN ERROR.

Submitted May term, 1937—Decided July 31, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the defendant in error, *T. Raymond Bazley,* prosecutor of the Pleas (*Edward F. Juska,* assistant prosecutor of the Pleas, on the brief).

For the plaintiffs in error, *Kremer & Proctor.*

PER CURIAM.

The plaintiffs in error, Harry Suckow, George Tuzenew, Max Koffman and Haskill McKelvey, were convicted in the Monmouth County Court of Quarter Sessions of "making or taking what is commonly known as a book upon the running, pacing or trotting, within and without the state, of horses, mares, gelding," &c., and "conducting the practices commonly known as bookmaking, and did then and there keep a place to which persons resorted for engaging in such illegal practices," contrary to the provisions of the Crimes act. 2 *Comp. Stat., p.* 1766, § 65.

The assignments of error and the specification of causes for reversal invoked for each of the defendants are identical, viz., that the trial court erred in denying a motion for direction of acquittal in favor of each of them at the end of the state's case and at the end of the entire case, and that the

verdict of guilty in each case was against the weight of the evidence. A further point is made challenging the charge of the trial judge as being erroneous and prejudicial to the rights of the plaintiffs in error. As to this latter point, we have only this to say, that the criticism of the charge is captious and we perceive no merit whatever in it. The entire record and proceedings, and transcript of the testimony, charge, &c., is before us on the certification of the trial judge.

The case is one essentially of fact.

The "bookmaking" which the plaintiffs in error are charged with conducting, took place on premises known as the Log Cabin Inn, Monmouth county, between Lakewood and Freehold, on the state highway. The Log Cabin Inn, as such, was a building used as a restaurant and bar, consisting of two and one-half stories. To the rear of this building was a smaller structure, perhaps thirty feet square, wherein it is charged the bookmaking was carried on. Admittedly Suckow and Tuzenew owned the Log Cabin Inn. The liquor license was in the name of Suckow or a nominee, one Crosby. Electricity for lighting and a "pay station" telephone was installed on the application of Suckow. Additional telephone service, described as "regular subscribers' service," was installed in the small rear building on the application of Tuzenew on April 9th, 1935. Bills for the circuit lines were cleared through the New York Telephone Company. The indictment charged that the gambling was in operation on May 9th, 1935.

It is apparent from the record that the place was under suspicion and under surveillance for some days prior to May 9th, 1935.

From the testimony of the witnesses produced by the state, two from the state department of alcoholic beverage control, and four from the office of the prosecutor of the Pleas of Monmouth county, the jury might readily and properly find that at or about the time in question from forty to fifty automobiles were parked on the premises during the afternoon from two to five o'clock; that on the day in question, when the establishment was raided, the investigators found on the wall, inside the small building, "a blackboard with the names

of horses;" that a platform was erected, whereon defendant Koffman was stationed "with ear phones;" that a cashier's booth was being operated in the premises by the two defendants McKelvey and Suckow, the former acting as cashier.

All defendants, except Tuzenew, were identified as being present in the gambling room under circumstances from which the jury might readily infer that they were in charge of the bookmaking operation. One of the witnesses testified that he had placed a bet on a horse race the day preceding the raid. No witness was able to testify that Tuzenew was present on the day of the raid, the only testimony concerning him indicating quite clearly that he was not present but that on the day in question his arrest occurred in the yard outside of the building.

The detectives from the county prosecutor's office confiscated the money found in the cashier's desk, amounting to $254.90, as well as slips and racing sheets, which apparently were found at the table where plaintiff in error McKelvey sat. These slips and racing charts were offered in evidence without objection, although we do not find them reproduced as exhibits in the state of case. This was the evidence at the end of the state's case.

The defense was a categorical denial of the charge laid in the indictment. Each of the defendants denied that he was engaged in conducting a bookmaking establishment. Tuzenew testified that the building in the rear had formerly been used by himself and his partner as a garage but that he had rented the same a short time previously for $25 a month to a Doctor John Cannon and that it was at the request of Cannon that the additional telephone service was installed; that the witness had no right of supervision in the place and that the doctor conducted a club in the premises where the members used to play cards and "had racing charts and racing papers." Doctor Cannon was not produced in court.

Another witness for the defense, one Henry Matter, a carpenter and builder, testified that he had done some work on the premises on the order of Doctor Cannon. He had a helper on this particular job, whose name was Otto, but who was

not produced at the trial. This was the state of the proofs at the close of the entire case.

This case is before us not only on bill of exceptions but on specification of causes for reversal under the one hundred and thirty-sixth section of the Criminal Procedure act (2 *Comp. Stat.*, p. 1863, and its supplement, 1 *Cum. Supp. Comp Stat.*, p. 898; *Pamph. L.* 1921, *ch.* 349), which require us, *inter alia*, to weigh the evidence.

As to the plaintiff in error Tuzenew, we think the verdict was against the weight of evidence. There was no direct evidence connecting him with the gambling operation as such. He was not present in the room with the other defendants and there was nothing to disclose him as a principal in the bookmaking that was in operation. We don't entertain much doubt that he had notice of the illegal operations but there is no evidence that he had knowledge, and no proof of circumstances that tended to make him a principal in this violation of the Criminal law. Compare *State* v. *Mausert,* 85 *N. J. L.* 498; 89 *Atl. Rep.* 1011. The verdict will be reversed in the case of Tuzenew because, in our view, it is against the weight of evidence. As to the remaining defendants Suckow, Koffman and McKelvey, the court was entirely right in rejecting motions to acquit at the end of the state's case and at the end of the entire case. The verdict was not contrary to the weight of evidence but entirely in accord therewith.

The conviction of Tuzenew is reversed, and a *venire de novo* allowed. The convictions of Suckow, Koffman and McKelvey will be affirmed.